## WATSON *v.* BROWN *et al.*

No. 12317. SEPTEMBER 23, 1938.

*J. D. Tindall, J. F. Kemp,* and *Clint. W. Hager,* for plaintiff. *Alvin L. Richards,* for defendants.

BELL, Justice. A common-law execution in favor of Otis Watson was levied on described real estate as the property of J. W. Maddox, the defendant in fi. fa. Willie Mae Brown filed a claim. Maddox executed to a bank a note or notes and two security deeds conveying the realty in question. These deeds were executed and recorded in 1928 and 1929, and antedated by several years the judgment on which the fi. fa. of plaintiff is based. By a merger of banks, the creditor bank was succeeded in title by another bank, to which a renewal note for a balance of the indebtedness was given by Maddox. In May, 1935, shortly after the renewal note became due, Alvin L. Richards, an attorney at law, went to the successor bank with a check drawn by Wilson Shirt Company, the employer of the claimant, and informed the officer of the bank with whom he dealt that the check was to purchase

the note and the security evidenced by such deeds, and that he desired the bank to transfer them to a person to be later named. The bank took the check, acknowledged its receipt, and signed an agreement to make the transfers whenever and to whomsoever Richards should thereafter direct. A few days later Richards had the bank to sign transfers of the note and the security to Willie Mae Brown, the claimant in this case. On the trial, after the evidence was closed, the court directed the jury to return a verdict in favor of the claimant; and judgment was entered accordingly. The plaintiff made a motion for a new trial on the usual general grounds, to which other grounds were added by amendment, assigning error on the direction of the verdict. The court overruled the motion, and the plaintiff excepted.

The contention of the plaintiff is, that the transfers by the bank to the claimant constituted a fictitious and fraudulent transaction; that in truth and in fact the claimant has no interest in the property; that she is holding it for the defendant in fi. fa.; and that her claim was filed for the purpose of protecting Maddox against the levy in favor of his judgment creditor, Watson. In support of this contention the plaintiff relies on the testimony of the claimant herself, that in purchasing this note and the security therefor she was lending money to a man she had never seen and on property she had never seen; and also on the fact that she made vague and conflicting statements as to where she got the money to repay her employer, Wilson Shirt Company, and as to whether she had fully repaid the sum so advanced by that company for her. Other circumstances were that she displayed much ignorance concerning the transaction, and left the matter entirely in the hands of her attorney, Richards, who was also attorney for Maddox, and was at the same time the friend and attorney of Wilson, the manager of the shirt company. The plaintiff relies additionally on the facts that the evidence shows that on a former trial this claimant, after testifying in the case, dismissed her claim; and that according to her testimony given on the former trial she admitted having executed to Maddox a quitclaim deed conveying the realty in question. Concerning this last contention, just what the claimant did testify, both formerly and in the present case, will sufficiently appear from the following excerpts from the record.

On the former trial, while being cross-examined by the attorney for the plaintiff, the claimant testified: "As to whether I signed anything for him [Richards, her attorney], I signed a paper or note, whatever it was I had to sign. As to what it was I had to sign at that time, I don't know. As to whether I did sign something at that time, and as to whether I put my signature on something, and as to whether I know what, I can't say what that was. I don't recall what it was. As to whether it was a quit-claim deed back to Mr. Maddox not very long ago, as to whether I remember pretty well about that, I think it was in the summer of 1936. I received this transfer in May, 1935, from Mr. Richards in that form. As to whether a year later, in 1936, I executed a transfer back to Mr. Maddox, I don't know what that was. I signed something. I read it over. I don't know what it was. As to whether it was a deed of some kind, I think so. As to whether that deed was made to Mr. Maddox, I suppose so, I don't know; that is my best recollection about it." And following that testimony, when questioned by her own attorney, she testified: "I told Mr. Hager [attorney for the plaintiff] I signed a deed, deeding the property back to Mr. Maddox, I signed something, I don't know what it was." In the *present case,* the claimant testified: "I filed a former claim in this case and had a trial on this matter, or a similar matter, once before. I testified in that case. As to whether I have an explanation I wish to offer of any testimony given in that case, the only explanation I can give is that I had never been in court before, and I was confused. As to what I am explaining now, well, I said that I signed the deed back to Mr. Maddox. As to whether I signed the deed to Mr. Maddox, no, sir, I didn't sign the deed to Mr. Maddox, because Mr. Maddox hadn't paid the money. As to the paper you are showing me, yes, that is my signature on that paper. That is the paper I referred to when I said I had signed a paper. I signed that paper and gave it to you. That is the only paper I have signed in this case." It appeared without dispute from other evidence that the paper referred to was the claim affidavit, signed by the claimant on July 6, 1936.

There is no evidence, other than the claimant's testimony, to show that a quitclaim deed was executed by her to Maddox; and taken as a whole, it would not have authorized a finding that any

such deed was ever executed. There were still other inconsistencies in the testimony of the claimant, and her evidence was contradicted in some respects by the testimony of Wilson, who testified as a witness in her behalf, in reference to the transfers from the bank and the transaction between her and the shirt company. The whole matter was fully and consistently explained, however, by checks and other documents introduced by the plaintiff, and by the testimony of Alvin L. Richards, into whose hands the matter of consummating the transfers was entrusted by the claimant and the Wilson Shirt Company. There is absolutely no evidence that Maddox himself put up any of the money paid to the bank, or that any one else did so for him. It is undisputed that the Wilson Shirt Company alone advanced for the claimant the money with which to pay for the transfers made by the bank to her, and that she has partly reimbursed the shirt company. It further appears, without dispute, that the debt of Maddox as evidenced by the renewal note and the security deeds is in part still unpaid. Whatever may have been the truth of the transaction between the claimant and the shirt company, it appears conclusively from the record that the title to the land is in the claimant, under the security deeds executed by Maddox, and the subsequent transfers by the holder. Some of the inconsistencies in the evidence related only to immaterial things. Compare *Sanders Manufacturing Co.* v. *Dollar Savings Bank,* 110 *Ga.* 559 (2) (35 S. E. 777); *Gillen* v. *Coconut Grove Bank & Trust Co.,* 172 *Ga.* 908 (159 S. E. 282). All others were conclusively explained by the testimony of the claimant and her attorney, Mr. Richards, and the documentary evidence. It is true, as declared in the Code, § 37-706, that "slight circumstances may be sufficient" to show fraud; but it is also provided therein that "fraud may not be presumed." Circumstances creating a mere suspicion are not sufficient; and the evidence in this case, construed most strongly against the claimant, does no more than create a suspicion as to the bona fides of the transaction here attacked as fraudulent. The evidence demanded a finding that the property was not subject to the levy, and the court did not err in so directing.        *Judgment affirmed. All the Justices concur.*