### HEARD *v.* NATIONAL BANK OF ILLINOIS.

1. Where upon the interlocutory hearing of an application for equitable relief, such as the granting of an injunction or the appointment of a receiver, the application was refused, and subsequently, before a final hearing, the equitable petition was voluntarily dismissed by the plaintiff, nothing was adjudicated save that, at the hearing referred to, the plaintiff did not show himself entitled to the temporary equitable relief sought.
2. An attachment issued upon an affidavit administered by a clerk of the superior court is absolutely void, and does not constitute a basis for rendering any valid judgment against the defendant therein.
3. Applying the rules above announced to the facts disclosed in the present record, the plaintiff in error is entitled to a new trial.

Argued November 11, — Decided December 11, 1901.

Levy and claim. Before Judge Janes. Polk superior court. June 26, 1901.

*J. A. Blance* and *Fouché & Fouché,* for plaintiff in error.
*W. C. Bunn,* contra.

FISH, J.   An execution in favor of the National Bank of Illi-·
nois against the Rockmart Sienna Company was levied upon cer-
tain land and the improvements thereon, as the property of the
defendant, and Mrs. Heard interposed a claim to the property.
Upon the trial of the claim case, the court directed a verdict find-
ing the property subject to the execution.   The claimant made a
motion for a new trial, which was overruled, and she excepted.
The execution was based upon a judgment in rem rendered in an
attachment proceeding instituted by the plaintiff against the de-
fendant.    The claimant attacked this judgment and the execution
issued thereon, and insisted that they were void, because the at-
tachment affidavit was made before and attested by a clerk of the
superior court.    She introduced in evidence the attachment affi-
davit, etc.    The court held that the question as to the validity of
the attachment proceedings was, as to the claimant, res adjudicata.
This ruling was made upon evidence introduced by the plaintiff in
execution, from which it appeared that Mrs. Heard had brought an
equitable petition against the National Bank and the Sienna Com-
pany, in which she "prayed that the plaintiff in fi. fa. be enjoined
from bringing the attached property to sale, and that the judgment
and execution obtained and issued on said attachment be declared
to be void, and further that a receiver be appointed to hold the
property until a final decree;" and that at the interlocutory hear-
ing the injunction and relief prayed for were refused.    It also ap-
peared that, at the trial term thereof, the case was, upon motion of
the plaintiff therein, dismissed and a judgment against her for costs
rendered by the court.

1. The first point to be considered by us is, whether the question
as to the validity of the attachment judgment and execution was,
relatively to the claimant, res adjudicata.    Clearly it was not, for
the simple and sufficient reason that no final decree involving this
question had been rendered against her.    Her equitable petition,
in which the validity of the attachment judgment and execution
was attacked, never resulted in a final decree upon the merits of
the case, but was, upon her own motion, dismissed, and the only
decree which was rendered at the trial term was one against her
for costs, which naturally followed the dismissal of the case.    The
refusal of the judge, at the interlocutory hearing, to grant an injunc-
tion, or to appoint a receiver, was not a final decree, and adjudi-

cated nothing, save that at that hearing the plaintiff did not show herself entitled to the temporary equitable relief which she sought. It was simply interlocutory and provisional, and would not have prevented the plaintiff from asking, when the case came up for trial upon its merits, for permanent equitable relief upon the same grounds.

2. Section 4511 of the Civil Code provides: " Before process of attachment shall issue, the party seeking the same, his agent or attorney at law, shall make an affidavit before some judge of the superior court, judge of the county court, or justice of the peace, or notary public ex-officio justice of the peace, that the debtor has placed himself in some one of the positions enumerated in this code, and also the amount of the debt claimed to be due." Section 4512 provides for the giving of a bond to indemnify the defendant for all damages sustained and costs incurred by him in consequence of the suing out of the attachment, in the event the plaintiff fails to recover. Section 4515 provides: " The affidavit being thus made and bond given, it shall be the duty of the officer before whom such affidavit is made and bond given, or any other officer authorized so to do, to issue an attachment against the defendant," etc. It is apparent at a glance that no provision is here made for making the affidavit before a clerk of the superior court; and, in the absence of such a provision, he has no authority to administer the oath and attest the affidavit. The attachment law evidently contemplates that the affidavit shall be made before a judicial officer; for in prescribing before whom the affidavit shall be made it designates only judicial officers, and it empowers the officer before whom the affidavit is made to issue the attachment. Section 4362 (1) of the Civil Code provides that clerks of the superior court have authority " To administer oaths and take affidavits in all cases permitted by law, or where the authority is not confined to some other officer." There is no statute of this State, of which we have any knowledge, which, either expressly or by necessary implication, permits a clerk of the superior court to administer the oath which verifies the facts set out in an attachment affidavit, and, as we have seen, the authority to administer such an oath is confined by section 4511 to judges of the superior courts, judges of county courts, justices of the peace, and notaries public who are ex-officio justices of the peace. As the attachment affidavit was made before a clerk of the superior court,

and such ministerial officer was not authorized to take such an affi-
davit, it follows that it was absolutely void; and consequently
everything based thereon was likewise void.    The judgment from
which the execution levied upon the property in the present case
issued was not a general judgment, but was purely a judgment in
attachment, being only against the specific property seized under
the attachment, and its validity was dependent upon the validity
of the attachment affidavit; and the affidavit being absolutely void,.
the judgment was a nullity.

3. It follows from the foregoing that the court erred in overrul-
ing the motion for a new trial.

<em>Judgment reversed.    All the Justices concurring.</em>